**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division**

**RASHAUN ANTONIO TAYLOR,**

      **Petitioner,**

v.
                          **CRIMINAL ACTION NO. 2:19-cr-36(1)
                          CIVIL ACTION NO. 2:23-cv-487**

**UNITED STATES OF AMERICA,**

      **Respondent.**

### *MEMORANDUM OPINION AND ORDER*

Before the Court is Rashaun Antonio Taylor's ("Petitioner") *pro se* Motion to Vacate, Set Aside, or Correct a Sentence by a Person in Federal Custody pursuant to 28 U.S.C. § 2255 ("Motion," "§ 2255 Motion"). ECF No. 234 ("Mot."). The Government opposed the Motion and Petitioner replied. ECF No. 244 ("Resp. Opp'n"); ECF No. 246 ("Reply"). Petitioner also filed a Motion to Amend his § 2255 Motion and a Motion to Supplement his amendment. ECF No. 254 ("Mot. Amend); ECF No. 255 ("Mot. Supp. Amend"). The matter is now ripe for judicial determination. Having reviewed the Motion and relevant filings, the Court finds that a hearing is not necessary to address Petitioner's Motion. *See* 28 U.S.C. § 2255(b) (A court shall grant a prompt hearing "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief."). For the reasons set forth below, Petitioner's § 2255 Motion is **GRANTED in part and DENIED in part,** and Petitioner's Motion to Amend and Motion to Supplement are **DENIED**.

### I.    FACTUAL AND PROCEDURAL HISTORY

On March 6, 2019, Petitioner was named in a six-count Superseding Indictment alongside one co-Defendant alleging the following:

- Count One: Racketeer Influenced and Corrupt Organizations Act ("RICO") conspiracy ("RICO Conspiracy," "Racketeering Conspiracy"), in violation of 18 U.S.C. § 1962(d);

- Count Two: Murder in Aid of Racketeering Conspiracy, in violation of 18 U.S.C. § 1959(a)(1);

- Count Three: Use of a Firearm Resulting in Death, in violation of 18 U.S.C. §§ 924(c)(1) and 924(j);

- Count Four: Attempted Interference with Commerce by Means of Robbery, in violation of 18 U.S.C. §§ 1951(a) and 2;

- Count Five: Felon in Possession of a Firearm, in violation of 18 U.S.C. §§ 922(g)(1), 924(a)(2), and 2; and

- Count Six: Distribution of Heroin, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C).

ECF No. 92 ("Supersed. Indictment"). Petitioner's trial began on February 11, 2020, and ended February 20, 2020. ECF Nos. 116–127. On February 18, the Court dismissed Count Four pursuant to Petitioner's Rule 29 motion for acquittal. ECF No 120. On February 20, the jury returned a verdict of guilty on Counts One, Three, Five, and Six, and not guilty on Count Two. ECF No. 124 ("Verdict").

On July 21, 2020, the Court conducted a sentencing hearing and imposed the following sentence:

- On Count One, 420 months in prison, followed by five years of supervised release;

- on Count Three, 120 months in prison to be served consecutively to Count One, followed by five years of supervised release to run concurrently to Count One;

2

- on Count Five, 120 months in prison to be served concurrently, followed by three years of supervised release to run concurrently; and

- on Count Six, 240 months in prison to be served concurrently, followed by three years of supervised release to run concurrently.

ECF No. 159. The Court also imposed a Special Assessment of $100.00 per Count, resulting in a total Special Assessment of $400.00. *Id.*

Petitioner appealed, and on August 18, 2021, the United States Court of Appeals for the Fourth Circuit ("Fourth Circuit") affirmed the Court's judgment. ECF Nos. 174–75; *see United States v. Taylor*, No. 20-4395, 2021 WL 3666679, at *2 (4th Cir. Aug. 18, 2021) (per curiam). On December 14, 2021, the Fourth Circuit denied Petitioner's petition for rehearing and rehearing en banc. ECF No. 181. On May 13, 2022, Petitioner filed a petition for writ of certiorari in the Supreme Court of the United States, which the Supreme Court denied on October 3, 2022. ECF No. 211; *see Taylor v. United States*, 143 S. Ct. 167 (2022).

Petitioner timely filed the instant § 2255 Motion on September 29, 2023. ECF No. 234.[1] On November 1, 2023, the Government responded in opposition to the § 2255 Motion, and Petitioner replied on November 22, 2023. ECF Nos. 244, 246. On December 27, 2023, Petitioner filed a Motion to Amend his § 2255 Motion, and later filed a Motion to Supplement his amendment on January 8, 2024. ECF Nos. 254, 255.

## II.   LEGAL STANDARD

### A.   Section 2255

Section 2255 allows a federal prisoner "claiming the right to be released upon the ground

---

[1] Petitioner filed two other § 2255 motions on October 3 and October 16, 2023. ECF Nos. 236–37. The Court ordered these successive motions stricken from the record. ECF No. 239. Petitioner also filed a Letter Motion to Compel Discovery on October 16, 2023, which the Court resolves today in a separate Order. ECF No. 238.

that the sentence was imposed in violation of the Constitution or laws of the United States . . . [to] move the court which imposed the sentence to vacate, set aside, or correct the sentence." 28 U.S.C. § 2255(a). In a motion under § 2255 ("§ 2255 motion"), the petitioner bears the burden of proving his or her claim by a preponderance of the evidence. *See Miller v. United States*, 261 F.2d 546, 547 (4th Cir. 1958). *Pro se* filers are entitled to more liberal construction of their pleadings. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007).

When deciding a § 2255 motion, the Court must promptly grant a hearing "unless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b). Motions under § 2255 generally "will not be allowed to do service for an appeal." *Sunal v. Large*, 332 U.S. 174, 178–79 (1947). For this reason, issues already fully litigated on direct appeal may not be raised again under the guise of a collateral attack. *United States v. Dyess*, 730 F.3d 354, 360 (4th Cir. 2013). Issues that should have been raised on direct appeal are deemed waived, procedurally defaulted, and cannot be raised on a § 2255 motion. *United States v. Mikalajunas*, 186 F.3d 490, 492 (4th Cir. 1999).

However, an individual may raise a procedurally defaulted claim if he or she can show (1) "cause and actual prejudice resulting from the errors of which he complains" or (2) that "a miscarriage of justice would result from the refusal of the court to entertain the collateral attack . . . [meaning] the movant must show actual innocence by clear and convincing evidence." *Id.* at 492–93. To demonstrate cause and prejudice, a petitioner must show the errors "worked to [his or her] actual and substantial disadvantage, infecting [his or her] entire trial with error of constitutional dimensions." *United States v. Frady*, 456 U.S. 152, 170 (1982). Ineffective assistance of counsel claims should generally be raised in a collateral motion instead of on direct appeal and constitute sufficient cause to review a procedurally defaulted claim. *See Untied States v. Benton*, 523 F.3d

4

424, 435 (4th Cir. 2008); *Mikalajunas*, 186 F.3d at 493.

## B.     Ineffective Assistance of Counsel Claim

A viable ineffective assistance of counsel claim arises when "the counsel's conduct so undermined the proper functioning of the adversarial process that the trial did not result in a just outcome." *Strickland v. Washington*, 466 U.S. 668, 686 (1984). An ineffective assistance of counsel claim is properly raised on a § 2255 motion in the district court rather than on direct appeal, unless the record conclusively shows ineffective assistance. *United States v. Williams*, 977 F.2d 866, 871 (4th Cir. 1992). To prove a claim of ineffective assistance of counsel, a petitioner must make two showings.

First, a petitioner must show that counsel's performance was deficient. *Strickland,* 466 U.S. at 687. Counsel's errors must have been so serious that he or she was not actually functioning as "counsel" as guaranteed by the Sixth Amendment. *Id.* To demonstrate deficient performance, a petitioner must show "that counsel's representation fell below an objective standard of reasonableness" under the prevailing norms of the legal community. *Id.* at 688. "Judicial scrutiny of counsel's performance must be highly deferential," so "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689. That presumption is even greater when counsel's decisions represent strategic tactical decisions requiring "assessment and balancing of perceived benefits against perceived risks." *United States v. Terry*, 366 F.3d 312, 317 (4th Cir. 2004). A petitioner bears the burden of rebutting this presumption. *Strickland*, 466 U.S. at 689.

Second, a petitioner must show that the deficient performance prejudiced the defense. *Id.* at 687. In other words, counsel's errors must have been so serious that the petitioner was deprived of a fair trial with a reliable result. *Id.* To demonstrate prejudice, a petitioner must prove that "there

is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. The Supreme Court defines a reasonable probability as "a probability sufficient to undermine confidence in the outcome." *Id.* In short, "[a]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgement of a criminal proceeding if the error had no effect on the judgment." *Id.* at 691. If a petitioner cannot meet either component of the *Strickland* test, the ineffective-assistance claim will fail. *Id.* at 700. The Court need not address both components of the test if the petitioner makes an insufficient showing on one prong. *Id.* at 697.

### III.    DISCUSSION

Petitioner asserts ten Grounds for relief in his § 2255 Motion. Petitioner also makes several "Claims" on reply ("reply claims"), some of which are arguments in support of his original Grounds for relief and some of which are new claims for relief. Additionally, Petitioner raises three new claims in his Motion to Amend and Motion to Supplement. In general, Petitioner requests that the Court vacate his convictions under Counts One, Three, Five, and Six and either grant a new trial or resentence him. Mot. at 11. The Court will first address the Grounds for relief stated in Petitioner's § 2255 Motion and his supporting arguments made on reply. Next, the Court will address Petitioner's novel reply claims. Finally, the Court will address Petitioner's Motion to Amend and Motion to Supplement.

### A.    § 2255 Motion

#### i.    Ground 3: Invalid Predicate Crime of Violence under 18 U.S.C. §§ 924(c) and (j) (Count Three)

Petitioner argues that under *United States v. Simmons*, 11 F.4th 239 (4th Cir. 2021), his Count Three conviction for Use of a Firearm Resulting in Death, in violation of 18 U.S.C. §§ 924(c) and (j), should be vacated because it rests on an invalid predicate crime of violence.

Mot. at 6; Reply at 17–19 (Reply Claim II). In *Simmons*, the Fourth Circuit held that RICO Conspiracy does not categorically qualify as a "crime of violence" under 18 U.S.C. § 924(c)(3)(A). 11 F.4th at 261. Count Three of the Superseding Indictment is expressly predicated on Counts One and Two charging Racketeering Conspiracy and Murder in Aid of Racketeering Activity, respectively. Supersed. Indictment at 10. Because Petitioner was acquitted on Count Two, his conviction under Count Three rests solely on RICO conspiracy as the predicate crime of violence for Count Three. Verdict; Supersed. Indictment at 10. The Government concedes that Count Three should be vacated considering the Fourth Circuit's holding in *Simmons*. Resp. Opp'n at 14.

*Simmons* is controlling here. Accordingly, Petitioner's Motion is GRANTED on Ground 3. To the extent Petitioner argues his trial or appellate counsel rendered ineffective assistance related to Count Three, those claims are DISMISSED as moot. *See* Mot. at 7; ECF No. 234-1 at 2 ("Mot. Ex. 1").

The Government requests that the Court order resentencing to allow the parties to argue for an appropriate sentence on Counts One, Five, and Six. *Id.* The Government argues that resentencing is especially appropriate where the vacated portion of a sentence may substantially affect the sentence calculation for the remaining offense conduct. *See id.* (citing *United States v. Hadden*, 475 F.3d 652, 669 (4th Cir. 2007); *United States v. Davis*, 139 S. Ct. 2319, 2336 (2019)). The Government asks the Court to consider that the Guidelines Range for Count One has a maximum of life in prison. *See id.* at 15 (citing ECF No. 155; ECF No. 173 ("Sent'g Hr'g Tr."); United States Sentencing Guidelines ("U.S.S.G.") § 2A1.1(a)). The Government also urges that resentencing would allow for the victims of Petitioner's offenses to be heard and for the Government to raise Petitioner's post-conviction conduct that "demonstrates a continued disregard for the law and proclivity to violence." *Id.* (citing 18 U.S.C. § 3771(a)(4); *Pepper v. United States*,

7

562 U.S. 476, 490–93 (2011)). In support, the Government submits Petitioner's Inmate Discipline Data, which shows Petitioner has possessed drugs and a dangerous weapon, tested positive for heroin, destroyed property, and refused to work while in prison. *See* ECF No. 244-1 ("Resp. Opp'n Ex. 1").

Section 2255(b) "confers a 'broad and flexible' power to the district courts 'to fashion an appropriate remedy.'" *United States v. Hillary*, 106 F.3d 1170, 1172 (4th Cir. 1997) (quoting *United States v. Garcia*, 956 F.2d 41, 45 (4th Cir. 1992)). "[W]hen a defendant's § 924(c) conviction is invalidated, courts . . . 'routinely' vacate the defendant's entire sentence on all counts 'so that the district court may increase the sentences for any remaining counts if such an increase is warranted.'" *Davis*, 139 S. Ct. at 2336 (quoting *Dean v. United States*, 137 S. Ct. 1170, 1176 (2017)). Yet "nothing in the sentence-package theory forbids the district courts from doing what the text of § 2255 clearly permits: 'correcting' a prisoner's unlawful sentence without conducting a formal 'resentencing.'" *Hadden*, 475 F.3d at 669. Thus, the Court still retains discretion to correct a sentence without vacating it entirely. *See Davis v. United States*, No. 4:16cv82, 2016 WL 6471457, at *7 (E.D. Va. Oct. 31, 2016).

Without resentencing, vacating Petitioner's conviction under Count Three would decrease Petitioner's total term of imprisonment from 540 months to 420 months.[2] In its discretion, the Court declines to impose a higher total sentence on Counts One, Five, and Six than 420 months, and the Court shall instead correct Petitioner's sentence without conducting a formal resentencing. Therefore, the Court VACATES Petitioner's conviction under Count Three, and the Court shall issue an amended judgment.

---

[2] Petitioner's total term of supervised release would remain the same at 5 years.

### ii. Ground 2: Failure to prove RICO Conspiracy (Count One)

In Ground 2, Petitioner asserts the Government failed to prove the elements of RICO conspiracy under Count One. Mot. at 5. Specifically, Petitioner argues the Government failed to present evidence of two or more predicate acts of racketeering activity to demonstrate that he was involved in a pattern of racketeering activity. *Id.* On reply, Petitioner argues he "provides substantial proof" that his murder of Mr. Eley and attempted robbery of a drug dealer were not in furtherance of Petitioner's gang enterprise, the Nine Trey Gangsters ("NTG"). Reply at 1–17 (Reply Claim I), 46–47 (Reply Claim titled "Uncharged Conduct").

The Government argues that Ground 2 is procedurally barred because Petitioner raised this issue on direct appeal. On appeal, Petitioner argued that this Court erred when it denied his Rule 29 motion regarding Count One because the Government failed to prove beyond a reasonable doubt that Petitioner or any member of the NTG engaged in a pattern of racketeering activity involving at least two acts of racketeering activity within a ten-year period. *See* Corrected Brief of Appellant, No. 20-4395, 4th Cir. Doc. 29 at 28, 30–33. The Fourth Circuit rejected this argument, finding that "ample evidence" exists to support Petitioner's conviction for RICO conspiracy. *Taylor*, 2021 WL 3666679, at *2.

Petitioner may not "circumvent a proper ruling on direct appeal by re-raising the same challenge in a § 2255 motion." *Dyess*, 730 F.3d at 361 (quoting *United States v. Linder*, 552 F.3d 391, 396 (4th Cir. 2009)). Petitioner raises no change in the law that would allow him to relitigate the sufficiency of the evidence underlying his conviction for RICO conspiracy under Count One. *See United States v. Roane*, 378 F.3d 382, 396 n.7 (4th Cir. 2004). Therefore, Petitioner's Motion is DENIED on Ground 2. To the extent Petitioner attacks the sufficiency of the evidence for Count One elsewhere in his filings, those claims are similarly DENIED.

### iii.   Ineffective Assistance of Counsel

#### a.   Grounds 1, 2, 6, 7: Prevented from Testifying

In Grounds 1, 2, 6, and 7, Petitioner argues his counsel was ineffective for preventing him from testifying at trial. *See* Pet'r's Mot. at 4–5; Mot. Ex. 1 at 1, 3. The Government argues that Petitioner's sworn statements at trial demonstrate that he independently and voluntarily chose not to testify. Resp. Opp'n at 18.

During trial, on February 18, 2020, the Court reminded Petitioner that he was under oath, informed him of his right to testify, and took a recess to allow Petitioner to consult with his counsel to decide whether he would testify. ECF No. 170 at 818:14–820:5 ("Feb. 18 Trial Tr."). Upon return from recess, Petitioner informed the Court that he chose not to testify at trial:

> THE COURT: Mr. Taylor, have you made a determination whether you wish to testify in this case or not?
>
> THE DEFENDANT: Yes, sir, I did.
>
> THE COURT: What was your decision?
>
> THE DEFENDANT: I'm not going to testify.

*Id.* at 820:9–13. Petitioner also confirmed that his decision was voluntary and independent:

> THE COURT: In making this decision, did you consult with [trial counsel] Mr. Dawson?
>
> THE DEFENDANT: Yes, I did.
>
> THE COURT: Is this your independent decision?
>
> THE DEFENDANT: Yes, sir.
>
> THE COURT: No one forced you to give up your right to testify; is that correct?
>
> THE DEFENDANT: No, sir.
>
> THE COURT: There's nothing that your counsel said to you that causes you not to testify; is that correct?

10

THE DEFENDANT: Correct.

*Id.* at 820:14–24.

"Solemn declarations in open court carry a strong presumption of veracity. The subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the record are wholly incredible." *Blackledge v. Allison*, 431 U.S. 63, 74 (1977). In the context of Rule 11 plea colloquies, the Fourth Circuit has held that "in the absence of extraordinary circumstances, the truth of sworn statements . . . is conclusively established, and a district court should, without holding an evidentiary hearing, dismiss any § 2255 motion that necessarily relies on allegations that contradict the sworn statements." *United States v. Lemaster*, 403 F.3d 216, 221–22 (4th Cir. 2005); *see also Fields v. Att'y Gen. of the State of Md.*, 956 F.2d 1290, 1299 (4th Cir. 1992) ("Absent clear and convincing evidence to the contrary, a defendant is bound by the representations he makes under oath during a plea colloquy.") The Court finds these standards persuasive when evaluating a colloquy at trial regarding the petitioner's rights to testify and to remain silent. In general, "courts must be able to rely on the defendant's statements made under oath during a properly conducted . . . colloquy," lest the statements lose their "'primary virtue'" of "'permitting quick disposition of baseless collateral attacks.'" *Lemaster*, 403 F.3d at 221–22 (quoting *Blackledge*, 431 U.S. at 79 n.19).

Petitioner demonstrates no extraordinary circumstances to suggest he should not be bound to his sworn statements at trial, and his claim is "patently frivolous." *Lemaster*, 403 F.3d at 221. The Court advised Petitioner about his constitutional rights, and the Court was justified in assuming that Petitioner's voluntary and independent decision not to testify was an appropriate strategic decision. *See United States v. Richardson*, 195 F.3d 192, 187 (4th Cir. 1999); *Hernandez Portillo v. United States*, No. 1:07-CR-00081-GBL, 2014 WL 3615815, at *10 (E.D. Va. July 17,

2014). Therefore, Petitioner fails to show that counsel's performance was constitutionally deficient or prejudicial. *See Strickland*, 466 U.S. at 687; *see Tunstall v. Armstead*, No. WMN-15-4012, 2017 WL 3917008, at *5–*6 (D. Md. Sept. 5, 2017) (denying ineffective assistance of counsel claim where record clearly showed petitioner voluntarily and independently chose not to testify). Petitioner's Motion is therefore DENIED on Grounds 1, 2, 6, and 7.

> b. <u>Grounds 4 and 9: Failure to Object during Government's Closing Arguments regarding Uncharged Conduct</u>

In Grounds 4 and 9, Petitioner alleges his counsel was ineffective for failing to object to the Government's statements about uncharged conduct during closing arguments. Pet'r's Mot. at 8; Mot. Ex. 1 at 4. Petitioner argues the Government improperly discussed Petitioner's alleged shooting of two individuals—a man named "Sean" and a "non-member of the 'NTG' concerning the robbery of a drug dealer"—even though he was not charged with that conduct. Mot. Ex. 1 at 4; Reply at 36–38 (Reply Claim VII). Petitioner argues the Government's statements are irrelevant to RICO conspiracy but nevertheless gave the jury reason to believe Petitioner conspired to commit robberies. Reply at 37–38.

The Government contends it informed Petitioner of its intent to admit evidence of uncharged acts demonstrating Petitioner's membership in the NTG enterprise and evidence of crimes other NTG members committed. Resp. Opp'n at 21 (citing ECF No. 107 at 6 ("Gov't Trial Br.")). The Government argues that evidence of uncharged acts and offenses that others committed is often relevant in proving the elements of RICO conspiracy, meaning any objection to these closing statements would have been meritless. *Id.* at 21. Additionally, the Government notes that Petitioner's trial counsel already challenged this evidence at trial when it moved for acquittal on RICO conspiracy. *Id.* (citing ECF No. 120; Feb. 18 Trial Tr. at 37:22–23, 39:1–2, 40:9–23, 45:2–8).

At trial, a witness who was an associate of Petitioner's testified that Petitioner told him he shot at and tried to kill a man named "Sean" and that the witness and Petitioner together robbed a drug dealer at gunpoint. Feb. 14 Trial Tr. at 672:13–21, 674:7–12, 682:6–684:13, 698:8–702:8. None of the conduct the witness described was specifically charged in the Superseding Indictment. Petitioner's counsel moved for a judgment of acquittal on RICO conspiracy, arguing in part that the witness was not part of the NTG, but rather a different gang, and that the witness, not Petitioner, robbed the drug dealer. *See* Feb. 18 Trial Tr. at 811:4–9, 812:9–23, 817:4–6. The Court reserved judgment on the motion for acquittal on Count One. *Id.* at 817:21–22. In its closing argument, the Government reminded the jury of the witness's testimony regarding these events. *Id.* at 849:6–11, 850:7–12. The Court later denied Petitioner's motion for acquittal on Count One before the jury returned its verdict. ECF No. 172 at 991:23–992:3 ("Feb. 20 Trial Tr.").

"It is well established that when seeking to prove a conspiracy, the government is permitted to present evidence of acts committed in furtherance of the conspiracy even though they are not all specifically described in the indictment." *United States v. Janati*, 374 F.3d 263, 270 (4th Cir. 2004). The Fourth Circuit has found evidence of uncharged acts—including robbery committed with a fellow gang member—to be relevant as "acts committed in furtherance of [RICO] conspiracy." *See United States v. Palacios*, 677 F.3d 234, 245 (4th Cir. 2012) (quoting *Janati*, 374 F.3d at 270).

The Government's closing statements were proper summaries about admissible evidence presented earlier in the trial regarding Petitioner's acts in furtherance of RICO conspiracy. *See Palacios*, 677 F.3d at 245. Any objection challenging the Government's closing statements for discussing uncharged conduct would have been meritless. *See id.*; *Janati*, 374 F.3d at 270. Therefore, Petitioner cannot satisfy the *Strickland* standard because counsel's performance was

13

neither deficient nor prejudicial. *See Rodriguez v. Bush*, 842 F.3d 343, 346 (4th Cir. 2016) ("A defendant is not prejudiced if his counsel fails to make an objection that is 'wholly meritless under current governing law.'" (quoting *Lockhart v. Fretwell*, 506 U.S. 364, 374 (1993))). To the extent Petitioner challenges the statements themselves, Petitioner does not show cause and prejudice excusing his procedural default of this issue, especially because the Fourth Circuit held that "ample evidence supports [Petitioner's] conviction for RICO conspiracy," including the evidence that Petitioner "robbed a drug dealer." *Taylor*, 2021 WL 3666679, at *2; *see Mikalajunas*, 186 F.3d at 492–93.

For these reasons, Petitioner's Motion is DENIED on Grounds 4 and 9.

c.  Ground 5: Failure to Object to Use of Acquitted Conduct at Sentencing

In Ground 5, Petitioner argues his counsel was ineffective for failing to object to the use of "acquitted conduct" related to his acquittal of Murder in Aid of Racketeering Activity under Count Two. Mot. Ex. 1 at 2. Petitioner asserts his counsel's ineffectiveness prejudiced him because the Court sentenced him to more than 20 years in prison on Count One. *Id.* Petitioner argues that in his case, the only potential predicate of RICO conspiracy that would trigger a sentence over 20 years was Murder in Aid of Racketeering Activity. *Id.* Petitioner argues that he cannot be sentenced to more than 20 years in prison if he is found not guilty of "any potential predicate that carries a life sentence." Reply at 45 (Reply Claim IX) (citing *Apprendi v. New Jersey*, 530 U.S. 466 (2000); *United States v. Nguyen*, 255 F.3d 1335, 1343–1344 (11th Cir. 2001)). Petitioner also argues that even though a Court may rely on evidence proven by a preponderance of the evidence at sentencing, it may not "go beyond the statutory maximum when offenses are not found by the jury." *Id.* at 46.

14

The Government contends the Court did not consider acquitted conduct, but rather the special sentencing factor in the Superseding Indictment alleging that Petitioner "did murder Delante Eley, in violation of [Virginia law]" and that the "killing was willful, deliberate, and premeditated." Supersed. Indictment at 8; *see* Resp. Opp'n at 23. The Government argues that the jury's unanimous verdict that Petitioner murdered Mr. Eley in furtherance of the Racketeering Conspiracy made Petitioner eligible for a life sentence pursuant to 18 U.S.C. § 1962(d). Verdict at 1. The Government also asserts the Court found it "appropriate to use the murder guideline" when calculating Petitioner's Sentencing Guidelines range because the murder was intentional and premeditated. Sent'g Hr'g Tr. at 7:19–24.

"A district court may . . . not 'impose a sentence above the statutory maximum based on a fact, other than a prior conviction, not found by a jury or admitted by the defendant.'" *United States v. Roy*, 88 F.4th 525, 530–31 (4th Cir. 2023) (quoting *Cunningham v. California*, 549 U.S. 270, 275 (2007)); *see also Apprendi*, 530 U.S. at 490 ("Other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt."). When sentencing a defendant within the permissible maximum range, "a district court is not barred from 'taking account of factual matters not determined by a jury and to increase the sentence in consequence.'" *United States v. Ventura*, 864 F.3d 301, 312 (4th Cir. 2017) (quoting *Rita v. United States*, 551 U.S. 338, 352 (2007)). Additionally, "a district court may consider conduct of which a defendant has been acquitted if the conduct has nonetheless been proved by a preponderance of the evidence." *Id.* (citing *United States v. Lawning*, 703 F.3d 229, 241 (4th Cir. 2012)). The statutory maximum sentence for RICO conspiracy is "20 years (or for life if the violation is based on a racketeering activity for which the maximum penalty includes life imprisonment)." 18 U.S.C. § 1963.

Petitioner fails to show that the Court considered a fact the jury did not find beyond a reasonable doubt when sentencing him to more than 20 years on Count One, meaning his counsel was not ineffective for failing to raise that objection. The jury unanimously found that Petitioner committed the murder of Mr. Eley in violation of Virginia law "as explained earlier by the Court" independently of its acquittal under Count Two. Verdict at 1. The Court instructed the jury that Racketeering Activity includes "acts involving murder, chargeable under Va. Code §§ 18.2-32, 18.2-26, and 18.2-22, and the common law of Virginia," and that "Va. Code Ann. § 18.2-32 defines murder to include both first-degree and second-degree murder." ECF No. 131 at 56 ("Jury Instrs."). Under Virginia law, first-degree murder is a Class 2 felony that carries a term of imprisonment of 20 years to life. *See* Va. Code. Ann. §§ 18.2-32, 18.2-10(b). Therefore, Petitioner's conviction under Count One was "based on a racketeering activity for which the maximum penalty includes life imprisonment," and he may be sentenced beyond the 20-year maximum that would otherwise apply. 18 U.S.C. § 1963(a); *see Apprendi*, 530 U.S. at 490.[3] Petitioner thus cannot demonstrate prejudice arising from his counsel's failure to make this objection. *Strickland*, 466 U.S. at 687.

Petitioner also cannot show that counsel's conduct was deficient. Rather than raise a meritless objection, counsel effectively represented Petitioner at sentencing when he objected to the Presentence Investigation Report's ("PSR") Guidelines calculation and argued for a sentence of 30 years in prison. *See* ECF No. 156 at 1–3 ("Def.'s Sent'g Pos'n"); ECF No. 147 at 39 ("PSR"). Counsel argued that the killing of Mr. Eley constituted Second Degree Murder under Virginia law and thus objected to the PSR's use of the First Degree Murder cross reference under U.S.S.G. § 2A1.1, which automatically results in a Base Offense Level of 43 and a Guideline Range of life

---

[3] Petitioner's reliance on *Nguyen* is unavailing because the jury in that case "failed to find that any of the defendants had committed a predicate act that had a potential penalty of life imprisonment." *Nguyen*, 255 F.3d at 1344.

in prison. Sent'g Hr'g Tr. at 4:10–5:10, 6:24–7:24; Def.'s Sent'g Pos'n at 1–3. Using the Second

Degree Murder cross reference under U.S.S.G. § 2A1.2, counsel argued Petitioner's Base Offense

Level should have been 38, leading to a Total Offense Level of 42 and a Guideline Range of 360

months to life. *See* Def.'s Sent'g Pos'n at 1–3; PSR at 39; U.S.S.G. § 5A (2018). The Court found

that the evidence demonstrated that Petitioner's murder of Mr. Eley was intentional and

premeditated, making it appropriate to apply the cross reference for First Degree Murder under

§ 2A1.1. Sent'g Hr'g Tr. at 7:19–24; *see* U.S.S.G. § 2A1.1 (2018) ("This guideline applies in cases

of premeditated killing."). After considering the § 3553(a) factors, the Court sentenced Petitioner

to 420 months, or 35 years, on Count One. ECF No. 159.

      For these reasons, Petitioner does not satisfy *Strickland*. Additionally, to the extent Ground

5 directly challenges the Court's alleged consideration of acquitted conduct at sentencing,

Petitioner again fails to satisfy the cause and prejudice standard that would excuse his procedural

default. *See Mikalajunas*, 186 F.3d at 492–93. Therefore, Petitioner's Motion is DENIED on

Ground 5.

      d.  Ground 8: Failure to Object to Jury Instruction No. 39 regarding the
          Definition of Racketeering Activity

      In Ground 8, Petitioner argues his counsel was ineffective for failing to consult with him

regarding Jury Instruction No. 39 and allowing the jury to receive that instruction. Mot. Ex. 1 at 4.

Jury Instruction No. 39 defines racketeering activity generally and the types of racketeering

activity alleged in Count One. Jury Instrs. at 55–63. Petitioner claims the instruction "allow[ed]

charges that were not made in the Indictment," including attempted murder, conspiracy to commit

murder, completed Hobbs Act robbery, and drug conspiracy. Mot. Ex. 1 at 4; *see* Reply at 34–36

(Reply Claim titled "Amended Jury Instruction"). Petitioner further argues the Court erroneously

instructed the jury on conspiracy to distribute under 21 U.S.C. § 846 because he was only indicted

for distribution of heroin under 21 U.S.C. § 841 in Count Six. Mot. Ex. 1 at 4; Reply at 32 (Reply Claim VI.A).

The Government counters that the racketeering activity defined in Jury Instruction No. 39 matched the racketeering activity alleged in Count One of the Superseding Indictment. Resp. Opp'n at 25. Because the Court reviewed each of the alleged racketeering activities alleged in Count One with the jury and properly instructed the jury on those activities in Jury Instruction No. 39, the Government argues the instruction is correct and that Petitioner's counsel was not deficient. *Id.* Finally, the Government contends that even if Jury Instruction No. 39 should not have included conspiracy to commit murder, Hobbs Act robbery, and drug conspiracy instructions, it would not have impacted the jury's verdict or Petitioner's sentence under Count One because the jury found Petitioner committed murder as part of the RICO conspiracy. *Id.* at 27; Verdict at 1. Therefore, the Government argues, Petitioner cannot establish prejudice under *Strickland.*

The record demonstrates that the Court and the parties thoroughly reviewed the jury instructions for Count One and that Jury Instruction No. 39 was proper. Count One alleges that Petitioner's pattern of racketeering activity consisted of:

    a. Acts involving Murder, chargeable under Va. Code §§ 18.2-32, 18.2-26, and 18.2-22, and the common law of Virginia;

    b. Acts involving Robbery, punishable under the laws of the United States, in violation of Title 18, United States Code, Section 1951(a), and chargeable under Va. Code §§ 18.2-58, 18.2-26, and 18.2-22, and the common law of Virginia; and

    c. Offenses involving the felonious manufacture, importation, receiving, concealment, buying, selling, and otherwise dealing in a controlled substance punishable under the laws of the United States, in violation of Title 21, United States Code, Section 846 (conspiracy to distribute and possess with intent to distribute controlled substances) and Section 841 (distribution and possession with intent to distribute controlled substances).

Supersed. Indictment at 6. Because Count One clearly alleges Petitioner committed Conspiracy to Distribute and Possess with Intent to Distribute controlled substances, in violation of 21 U.S.C. § 846, as a racketeering activity, the jury properly considered evidence and instructions concerning that activity. Although Count Six charges Petitioner with Distribution of Heroin, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C), but not conspiracy under 21 U.S.C. § 846, that Count does not limit the types of racketeering activity that would support a conviction under Count One. *Id.* at 12.

Petitioner had ample opportunity to understand the types of alleged racketeering activities that the jury would consider under Count One. Petitioner's Proposed Jury Instruction No. 57 defines racketeering activity and includes instructions on "acts involving murder" under Virginia law, "including attempted murder and conspiracy to commit murder;" "acts involving robbery" under Virginia law; Hobbs Act Robbery under 18 U.S.C. 1951(a); and Distribution and Possession with Intent to Distribute a controlled substance and conspiracy to do so under 21 U.S.C. §§ 841 and 846. ECF No. 103 at 82–91. Petitioner's counsel did not object to the Court's jury instructions defining racketeering activity, including instructions on the same offenses in Proposed Instruction No. 57. *See* Feb. 18 Trial Tr. at 824:11–22. After noticing the Court's draft instructions did not include robbery and drug conspiracy, the Government requested that the instructions include those types of racketeering activity. *Id.* at 825:9–17. The Court agreed, stating "anything that's in the nature of the offense charged should be in that instruction." *Id.* at 825:18–24, 826:6–8. The final Jury Instruction No. 39 includes the same conduct Petitioner proposed in his Proposed Instruction No. 57, including robbery and drug conspiracy, with no significant differences in language. *See* Jury Instrs. at 55–63. The Court later orally instructed the jury on racketeering activity in open court. *See* ECF No. 171 at 941–46 ("Feb. 19 Trial Tr.").

19

Petitioner essentially argues that counsel should have proposed a different instruction. Yet where a jury instruction is proper, "it is not ineffective assistance of counsel to fail to offer additional or different instructions." *Pruett v. Thompson*, 996 F.2d 1560, 1577 (4th Cir. 1993). As the record demonstrates, Jury Instruction No. 39 was properly based on the allegations in Count One, meaning any objection to Jury Instruction No. 39 would have been meritless. Additionally, Jury Instruction No. 7 stated that Petitioner was "not on trial for any act or crime not contained in the indictment," which Petitioner's counsel previewed to the jury in his closing argument. *See* Jury Instrs. at 12; Feb. 18 Trial Tr. at 860:9–12. This instruction gave Petitioner additional protection from the prejudice he alleges in Ground 8.

For these reasons, Petitioner fails to show that his counsel was deficient or prejudicial. *See Strickland*, 466 U.S. at 687. Petitioner's Motion is therefore DENIED on Ground 8.

e. <u>Ground 10: Appellate Counsel's Conflict of Interest</u>

In Ground 10, Petitioner asserts his appellate counsel, Harry Harmon Jr., operated under a conflict of interest that deprived him of the right to effective counsel and that the Government "knowingly and intentionally concealed" the conflict. Mot. Ex. 1 at 5. Petitioner claims Mr. Harmon was conflicted because he previously represented Gary Hassell, a Government witness in *United States v. Simmons*, 2:16-cr-130 (E.D. Va.), a case in which Antonio Simmons and other NTG members were convicted of RICO conspiracy and Murder in Aid of Racketeering Activity, along with other crimes. *See generally* Docket Sheet, *Simmons*, 2:16-cr-130. Petitioner argues that because he and Mr. Simmons were both in the NTG and Mr. Hassell testified about NTG members who were once under Petitioner's management, Mr. Harmon's prior representation of Hassell created a conflict of interest in Petitioner's case. Reply at 49–50 (Reply Claim X.B). Finally,

Petitioner argues that because another attorney was conflicted in *Simmons* and in Petitioner's case, Mr. Harmon must also be conflicted from Petitioner's case. Pet'r's Mot. at 5; Reply at 48.[4]

The Government counters that no actual conflict exists in Petitioner's case. Resp. Opp'n at 27–28. The Government argues that Mr. Simmons and Petitioner were leaders of separate lines of the NTG and were convicted for independent crimes based on different victims, motives, members, and lines of gang activity. *Id.* at 28. The Government avers that it did not consider Mr. Hassell to be a potential witness in Petitioner's trial, and Mr. Hassell was not called as a witness. *Id.* Therefore, the Government argues, Mr. Harmon did not "actively represent[] conflicting interests," and Mr. Harmon's performance was not deficient or prejudicial to Petitioner. *Id.* at 28–29 (quoting *Cuyler v. Sullivan*, 446 U.S. 335, 350 (1980)).

In March 2016, Mr. Hassell was indicted in the Eastern District of Virginia along with six co-defendants for RICO conspiracy and other charges. *See United States v. Threat*, 2:16-cr-2, ECF No. 1. Mr. Harmon was appointed to represent Mr. Hassell shortly thereafter, but Mr. Harmon was later replaced with Mr. Hassell's retained counsel in May 2016. *See Threat*, 2:16-cr-2, ECF Nos. 92, 126–27. In July 2016, Mr. Hassell pled guilty to one count of Sex Trafficking of a Child. *See Threat*, 2:16-cr-2, ECF Nos. 167–169. In September 2016, Mr. Simmons and three co-defendants were indicted in the Eastern District of Virginia. *See Simmons*, 2:16-cr-130, ECF No. 1. The Government identified Mr. Harmon as a conflicted attorney. *See Simmons*, 2:16-cr-130, ECF No. 1-1 at 3, 5, 7. After a Second Superseding Indictment was filed against Mr. Simmons and his co-defendants in August 2017, the Government again identified Mr. Harmon as a conflicted attorney

---

[4] Petitioner argues, in part, that the Court should provide relief from judgment pursuant to Federal Rules of Civil Procedure 60(b)(3) and 60(b)(6) because of Mr. Harmon's alleged conflict of interest. Reply at 47–48 (Reply Claim X.A). As a rule of civil procedure, Rule 60(b) "does not provide for relief from judgment in a criminal case." *United States v. Mosavi*, 138 F.3d 1365, 1366 (11th Cir. 1998); *see United States v. Abney*, 39 Fed App'x 12, 14 (4th Cir. 2002) ("[T]he Federal Rules of Civil Procedure do not provide a vehicle by which [a criminal defendant] may challenge his criminal judgment."). Therefore, Petitioner's request for relief under Rule 60(b) is DENIED.

in its conflict list. *See Simmons*, 2:16-cr-130, ECF No. 125. The Government later called Mr. Hassell as a witness at the *Simmons* trial in March 2018. *Simmons*, 2:16-cr-130, ECF No. 395-1 at 3. Mr. Harmon did not appear in the *Simmons* case.

In the present case, after Petitioner was indicted in March 2019, the Government submitted a conflict list that did not include Mr. Harmon. ECF No. 7. The Court appointed Mr. Harmon and attorney John Babineau to represent Petitioner. ECF No. 13. Mr. Babineau was later substituted with attorney S.W. Dawson, but Mr. Harmon represented Petitioner throughout his pre-trial proceedings, trial, sentencing, and on direct appeal, collectively spanning from March 2019 through September 2021. ECF Nos. 13, 100, 177.

"When a petitioner premises his ineffective assistance claim on the existence of a conflict of interest, the claim is subjected to the specific standard spelled out in *Cuyler v. Sullivan*, 446 U.S. 335, 100 S.Ct. 1708, 64 L.Ed.2d 333 (1980), instead of that articulated in *Strickland*." *United States v. Nicholson*, 475 F.3d 241, 249 (2007). "To establish that a conflict of interest resulted in ineffective assistance . . . [t]he petitioner must show (1) that his lawyer was under 'an actual conflict of interest' and (2) that this conflict 'adversely affected his lawyer's performance.'" *Id.* (quoting *Sullivan*, 446 U.S. at 348). Although these two requirements "are often intertwined," *United States v. Tatum*, 943 F.2d 370, 375 (4th Cir. 1991), an "[a]dverse effect cannot be presumed from the mere existence of a conflict of interest." *Rubin v. Gee*, 292 F.3d 396, 401 (4th Cir. 2002); *see United States v. Stitt*, 552 F.3d 345, 350 (4th Cir. 2008).

To establish an actual conflict, the petitioner "must show that his interests diverged with respect to a material factual or legal issue or to a course of action." *Nicholson*, 475 F.3d at 249 (quoting *Gilbert v. Moore*, 134 F.3d 642, 652 (4th Cir. 1998) (en banc)). In other words, counsel must have "actively represented conflicting interests." *Sullivan*, 446 U.S. at 350 (citation omitted).

22

If the petitioner satisfies the *Sullivan* standard, "prejudice is presumed and there is no need to demonstrate a reasonable probability that, but for the lawyer's conflict of interest, the trial or sentencing outcome would have been different." *Nicholson*, 475 F.3d at 249. (citing *Sullivan*, 446 U.S. at 349–50).

Petitioner fails to demonstrate Mr. Harmon operated under an actual conflict of interest. First, Mr. Hassell's testimony in the 2018 *Simmons* trial does not affect any material factual or legal issue here because Mr. Hassell was not considered or called as a witness in Petitioner's case. This fact eliminates the possibility of a conflict arising from "successive representation . . . in which a former client has become an adverse witness" against the current client. *United States v. Esposito*, 816 F.2d 674 (4th Cir. 1987) (unpublished table opinion). Second, Mr. Harmon's representation of Mr. Hassell in 2016 and his conflict from the *Simmons* case has no bearing on any material issue in Petitioner's case. *Nicholson*, 475 F.3d at 249. By the time Mr. Hassell testified in the *Simmons* trial, he had already pled guilty to separate, unrelated charges and Mr. Harmon no longer represented him. The fact that Mr. Hassell may have testified in *Simmons* about NTG members Petitioner knew or oversaw as a gang leader is irrelevant to Petitioner's conviction, because that evidence was not offered at Petitioner's trial. Petitioner was indicted, tried, and convicted independently from the *Simmons* case for separate crimes established using evidence offered at Petitioner's own trial. Finally, the other attorney conflicts in both *Simmons* and Petitioner's case are irrelevant to whether Mr. Harmon "actively represented conflicting interests" when representing Petitioner. *Sullivan*, 446 U.S. at 350.

For these reasons, Petitioner fails to show Mr. Harmon "actively represented conflicting interests" or that an actual conflict of interest existed. *Sullivan*, 446 U.S. at 350. Petitioner thus fails to show ineffective assistance of appellate counsel and cannot demonstrate prejudice arising

from any failure to raise this argument on direct appeal. *See Mikalajunas*, 186 F.3d at 492–93. Petitioner's Motion is DENIED on Ground 10.

> f. Grounds 1–3, 5–10: Ineffective Assistance of Appellate Counsel for Failure to Raise Certain Arguments on Appeal

Construing Petitioner's Motion liberally, Petitioner claims Mr. Harmon failed to consult with him on the issues raised in his Motion and failed to raise those issues on direct appeal, resulting in ineffective assistance of appellate counsel. *See generally* Pet'r's Mot.; Mot. Ex. 1. Excluding Ground 3, the Government argues that Petitioner raises no viable Grounds for relief and therefore cannot show that Mr. Harmon was ineffective for failing to raise those arguments on appeal. Resp. Opp'n at 29–31.

"Th[e] right to effective assistance of counsel extends to require such assistance on direct appeal of a criminal conviction." *Bell v. Jarvis*, 236 F.3d 149, 164 (4th Cir. 2000) (en banc) (applying *Strickland* to claims of ineffective assistance of counsel during appellate proceedings). "In deciding which issues to raise on appeal, [counsel] is entitled to the presumption that he decided which issues were most likely to afford relief." *Pruett v. Thompson*, 996 F.2d 1560, 1568 (4th Cir. 1993). "Effective assistance of appellate counsel does not require the presentation of all issues on appeal that may have merit." *Lawrence v. Branker*, 517 F.3d 700, 709 (4th Cir. 2008). Indeed, the "process of winnowing out weaker arguments on appeal and focusing on those more likely to prevail, far from being evidence of incompetence, is the hallmark of effective appellate advocacy." *Smith v. Murray*, 477 U.S. 527, 536 (1986) (internal quotations and citations omitted). "Generally, only when ignored issues are clearly stronger than those presented, will the presumption of effective assistance of counsel be overcome." *Gray v. Greer*, 800 F.2d 644, 646 (7th Cir. 1986), *cited with approval* in *Smith v. Robbins*, 528 U.S. 259, 288 (2000). "The ineffective assistance inquiry therefore requires a court to compare the strength of an issue not raised on direct

24

appeal . . . with the strength of arguments that were raised." *United States v. Allmendinger*, 894 F.3d 121, 126 (4th Cir. 2018). In conducting that comparison, the court "focus[es] on the reasonableness of appellate counsel's conduct viewed as of the time of the conduct." *Id.* (citing *Strickland*, 466 U.S. at 690).

On direct appeal, Mr. Harmon argued that "the Government failed to present sufficient evidence to support his conspiracy conviction and claims that the district court erred in failing to sua sponte declare a mistrial." *Taylor*, 2021 WL 3666679, at *1. Under the first argument, Mr. Harmon specifically asserted the Court erred in denying Petitioner's Rule 29 motion for acquittal because the Government failed to prove Petitioner was "involved in a pattern of racketeering activity involving at least two acts of racketeering activity within a ten-year period." Fourth Cir. Doc. 29, Corrected Br. Appellant at 35–38, No. 20-4395. The Fourth Circuit affirmed this Court's judgment, holding that "ample evidence supports [Petitioner's] conviction for RICO conspiracy" and that the Court "soundly exercised its discretion in declining to declare a mistrial." *Id.* at *2.

Petitioner fails to demonstrate the issues raised in his Motion are clearly stronger than the ones Mr. Harmon presented on direct appeal or that Mr. Harmon acted unreasonably. Beginning with Ground 3, it was not unreasonable for Mr. Harmon to fail to argue the holding of *Simmons* because that case was decided after Taylor's appeal. *See Simmons*, 11 F.4th 239 (4th Cir. 2021) (decided August 23, 2021); *Taylor*, 2021 WL 3666679 (decided August 18, 2021). Further, because the Court grants Petitioner's Motion on Ground 3 regarding the *Simmons* claim, any ineffective assistance claim against Mr. Harmon in Ground 3 is moot.

On Ground 2, the record precludes Petitioner's ineffective assistance of appellate counsel claim. In his Motion, Petitioner alleges the "Government failed to present evidence of two or more predicate acts" of RICO conspiracy and answered "No" when asked whether Ground 2 was raised

on appeal. Pet'r's Mot. at 5. Yet the record clearly shows Mr. Harmon raised this issue on appeal. *See Taylor*, 2021 WL 3666679, at *1; Fourth Cir. Doc. 29, Corrected Br. Appellant at 35–38, No. 20-4395.

As explained above regarding all remaining Grounds—Grounds 1, 5, 6, 7, 8, 9, and 10—Petitioner has no meritorious ineffective assistance of counsel claims and does not show prejudice arising from his procedural default of those issues. None of these claims are "clearly stronger" than those which Mr. Harmon raised on direct appeal, *Greer*, 800 F.2d at 646, and the Court presumes Mr. Harmon effectively raised arguments more likely to prevail. *See Murray*, 477 U.S. at 536. As a result, Petitioner cannot demonstrate a reasonable probability that, but for appellate counsel's failure to raise these Grounds, he would have won his appeal. *See Beyle v. United States*, 269 F. Supp. 3d 716, 734 (E.D. Va. 2017). Even if Mr. Harmon failed to consult Petitioner on these issues, Petitioner's "fail[ure] to identify any viable claims that counsel should have pursued" means he "establishes neither deficiency nor resulting prejudice." *Hinton v. Pruett*, 2013 WL 3199687, at *7 (E.D. Va. June 21, 2013) (citing *Bell*, 236 F.3d at 164).

For these reasons, Petitioner's claims of ineffective assistance of appellate counsel are DENIED.

**B.    Novel Reply Claims**

On Reply, Petitioner raises several new claims that are distinct from the Grounds for relief asserted in his Motion and unrelated to the Government's Response in Opposition.[5] A § 2255 motion "must . . . specify all the grounds for relief available to the moving party." Rules Governing § 2255 Proceedings, Rule 2(b)(1) (2019). "Courts will generally not permit a petitioner to raise

---

[5] Petitioner also includes several exhibits with his Reply comprising excerpted trial evidence. ECF Nos. 246-1–7. The Court has considered these exhibits and finds none are relevant or persuasive in favor of Petitioner's Grounds for relief.

new arguments in a reply brief." *United States v. Barrero*, No. 6:17-cr-00426-JMC, 2022 WL 3030752, at *15 (D. S.C. Aug. 1, 2022) (collecting cases). Thus, courts often decline to consider novel claims for relief made on reply in a § 2255 proceeding, even in cases involving a *pro se* petitioner. *See, e.g., Doster v. United States*, No. 3:20-cv-390-MOC, 2021 WL 374974, at *3 (W.D.N.C. Feb. 3, 2021); *Jones v. United States*, No. 1:19-cv-274-MOC, 2020 WL 7318140, at *4 n.4 (W.D.N.C. Dec. 11, 2020); *United States v. Rivers*, No. 3:15CR164, 2019 WL 4418992, at *3 n.3 (E.D. Va. Sept. 16, 2019); *Hatt v. United States*, No. 2:15CR153, 2017 WL 5012585, at *1 (E.D. Va. Nov. 1, 2017). In an effort to provide *pro se* litigants a liberal construction of their pleadings, however, some courts have interpreted novel reply claims as a motion to amend the original § 2255 motion. *See Royal v. United States*, No. AW-13-386, 2013 WL 3868152, at *2–*3 (D. Md. July 24, 2023).

Petitioner's novel reply claims are as follows:[6]

- Reply Claim III.A–B: The Court should vacate Taylor's conviction under Count Five because the officer who stopped and arrested Petitioner had no probable cause to search his vehicle, thereby violating the Fourth Amendment. Reply at 23–25.

- Reply Claim III.C: The evidence was insufficient to sustain a conviction under Count Five because the Government failed to prove Petitioner possessed a firearm. *Id.* at 25–26.

- Reply Claim IV.A–D: The evidence was insufficient to sustain a conviction under Count Six because the Government failed to prove that Taylor distributed a detectable amount of heroin. *Id.* at 28–31.

---

[6] There is no "Reply Claim V" in Petitioner's Reply. Reply claims that appear without a roman numeral are named using their titles or headings.

- Reply Claim IV.C: The United States Probation Office and the Court committed a clerical error when attributing 4,423.46 grams of heroin to Taylor. *Id.* at 30–31; *see* PSR ¶¶ 34, 72.

- Reply Claim IV.D: The United States Probation Office and the Court erred in attributing a four-point adjustment to Petitioner's Base Offense Level for his role in the offense of Acts Involving Distribution of Heroin related to Counts One and Six. Reply at 31; *see* PSR ¶¶ 72–75.

- Reply Claim titled "Ineffective Assistance of Counsel" and Reply Claim VI.B: The Court failed to instruct the jury that the Government must prove that Petitioner agreed to commit a racketeering activity in order to convict him for RICO conspiracy under Count One. Reply at 26–27, 33.

- Reply Claim titled "Ineffective Assistance of Counsel" and Reply Claim VI.C: Jury Instruction No. 42 was erroneous because it did not fairly state the controlling law. *Id.* at 26–27, 34.

- Reply Claim VII.B: In its closing argument, the Government improperly vouched for the credibility of a witness that testified about Petitioner's distribution of heroin and made improper statements regarding the evidence offered to prove Count Five. *See id.* at 38–39; *see also id.* at 26.

- Reply Claim regarding "false and perjured testimony" and Reply Claim VIII.A: "The Government knowingly allowed three witnesses to give false and perjured testimony to a Grand Jury and to a Jury at trial." *Id.* at 40–45.

- Reply Claim X.C: Several of the Government investigators and attorneys involved in Petitioner's case were involved in *Simmons*, meaning they operated under a conflict of interest. Reply at 51–52.

Petitioner does not explain why he failed to raise these claims on direct appeal or in his § 2255 Motion. Therefore, the Court finds no reason to consider the merits of these claims, and it declines to do so. *See Barrero*, 2022 WL 3030752, at *15 (dismissing novel § 2255 claim raised on reply where petitioner "did not explain or even mention her failure to include the claim in her original motion"); *Clinton v. United States*, No. 3:10CV85, 2012 WL 6631730, at *3 (N.D. W. Va. Dec. 19, 2012) (dismissing novel reply claims where petitioner did not explain why they were not raised on direct appeal or how procedural default prejudiced him). Even if the Court construed Petitioner's novel claims as a motion to amend, they do not "relate back" to the Grounds in Petitioner's Motion and are therefore untimely under § 2255(f), as explained below regarding petitioner's Motion to Amend and Motion to Supplement. Fed. R. Civ. P. 15; *see Royal*, 2013 WL 3868152, at *2–*3; *Barrero*, 2022 WL 3030752, at *15 n.15.

For these reasons, Petitioner's novel reply claims are DISMISSED.

## C.   Motion to Amend and Motion to Supplement

After filing his Reply, Petitioner filed a Motion to Amend his § 2255 Motion "in response to the Government's Reply [*sic*]." Mot. Amend at 1. Petitioner also filed a Motion to Supplement the Motion to Amend, which the Court construes as an additional amendment. *See* Mot. Supp. Amend. Petitioner makes three claims in these motions ("Amendment Claims"). In Amendment Claim 1, Petitioner argues the *Simmons* error that compels vacating his conviction under Count Three also compels vacating Count One. Petitioner claims the jury's special verdict that Petitioner committed murder was based on his Count Three conviction for Use of a Firearm Resulting in

29

Death.[7] Mot. Amend at 1–3. In Amendment Claim 2, Petitioner asserts the jury's special verdict and Petitioner's conviction under Count One are invalid because, according to Petitioner, neither the Superseding Indictment nor the special verdict state that petitioner conspired to murder Mr. Eley willfully, deliberately, and with premeditation. *Id.* at 1, 3–6. In Amendment Claim 3, Petitioner argues the jury's special verdict is based on second-degree murder under Virginia law and that his Guideline Range under Count One should not be life in prison. Mot. Supp. Amend.

The Section 2255 Rules "do not specify a procedure for amending motions," and "[t]herefore courts have typically applied Federal Rule of Civil Procedure 15 to the amendment of a § 2255 motion." *United States v. Pittman*, 209 F.3d 314, 317 (4th Cir. 2000). "A party may amend its pleading once as a matter of course within 21 days after serving it," Fed. R. Civ. P. 15(a)(1)(A), but "[i]n all other cases, a party may amend its pleading only with . . . the court's leave," which should be given "freely . . . when justice so requires." Fed. R. Civ. P. 15(a)(2). Petitioner filed these motions approximately three months after his § 2255 Motion. Accordingly, the Court now considers whether to grant leave to amend.

"A district court may deny a motion to amend when the amendment would be prejudicial to the opposing party, the moving party has acted in bad faith, or the amendment would be futile." *Simmons v. United Mortg. & Loan Inv., LLC*, 634 F.3d 754, 769 (4th Cir. 2016) (quoting *Equal Rights Center v. Niles Bolton Assocs.*, 602 F.3d 597, 603 (4th Cir. 2010)). Where "amended claims do not relate back to the original motion, they are barred by the statute of limitations [under 28 U.S.C. § 2255(f)] and therefore futile." *See Pittman*, 209 F.3d at 318. Petitioner's judgment of conviction became final when the Supreme Court denied certiorari on October 3, 2022. *See United States v. Segers*, 271 F.3d 181, 186 (4th Cir. 2001). Because Petitioner filed his Motion to Amend

---

[7] Petitioner refers to a "*Davis* error," but the Court understands Petitioner's argument as one based on *Simmons*, 11 F.4th at 261, as argued in Ground 3. Mot. Amend at 1.

more than one year after that date, any new claims are untimely and futile unless they relate back to the timely claims of the original § 2255 Motion. *See* 28 U.S.C. § 2255(f)(1); *Pittman*, 209 F.3d at 318.

An amendment may "relate back" when it "asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading." Fed. R. Civ. P. 15(c)(1)(B); *see Pittman*, 209 F.3d at 317. In § 2255 proceedings, it is not enough that the claim "relate to the same trial, conviction, or sentence as a timely filed claim," or else § 2255's "limitation period would have slim significance." *Mayle v. Felix*, 545 U.S. 644, 662 (2005). Instead, the newly added claims must "arise from the same core facts as the timely filed claims," and the facts cannot differ in "time and type." *Id.* at 657.

All of Petitioner's Amendment Claims are futile. First, none of the Amendment Claims address ineffective assistance of counsel, meaning they concern a different "time and type" of core facts and do not relate back to the Grounds for relief raising ineffective assistance. *Mayle*, 545 U.S. at 657; *see Pittman*, 2019 F.3d at 318 (holding new ineffective assistance claim did not relate back to claims regarding sentencing enhancement or lack of jurisdiction). Second, even if the Amendment Claims relate back to other Grounds for relief, Petitioner has procedurally defaulted his Amendment Claims and he does not demonstrate cause or prejudice arising from default. Therefore, Petitioner's Amendment Claims are waived, and amendment would be futile.

Furthermore, the Court finds that justice does not require granting Petitioner's Motion to Amend or Motion to Supplement. *See* Fed. R. Civ. P. 15(a)(2). Petitioner submits these motions in response to certain arguments in the Government's opposing brief, but Petitioner already submitted a lengthy Reply containing several novel claims, and these motions were filed after the

deadline to reply expired. Petitioner also does not explain why he failed to include the Amendment Claims in his original Motion or Reply. *See Barrero*, 2022 WL 3030752, at \*15.

For the reasons stated above, Petitioner's Motion to Amend and Motion to Supplement are DENIED.

## IV.   CONCLUSION

For the reasons stated above, Petitioner's § 2255 Motion (ECF No. 234) is **GRANTED in part and DENIED in part**, Petitioner's Motion to Amend (ECF No. 254) is **DENIED**, and Petitioner's Motion to Supplement (ECF No. 255) is **DENIED**. Petitioner's sentence on Count Three is **VACATED** and **SET ASIDE**. Petitioner is no longer required to serve a term of one hundred and twenty (120) months concurrently to Count One. Accordingly, the one hundred dollar ($100.00) special assessment imposed on Count Three is an overpayment of special assessment which shall be **RETURNED** to Petitioner. All other provisions of the Court's judgment shall remain unchanged, and the Court will issue an amended judgment.

This Court may issue a certificate of appealability only if the applicant has made a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c); Fed. R. App. P. 22(b)(1). This means Petitioner must demonstrate that "reasonable jurists could debate whether . . . the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'" *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (quoting *Barefoot v. Estelle*, 463 U.S. 880, 893, n.4 (1983)); *see United States v. Swaby*, 855 F.3d 233, 239 (4th Cir. 2017). Because Petitioner fails to demonstrate a substantial showing of a denial of a constitutional right, a Certificate of Appealability is **DENIED**.

In addition, the Court **ADVISES** Petitioner that he may appeal from this final Order by forwarding a written notice of appeal to the Clerk of the United States District Court, United States

Courthouse, 600 Granby Street, Norfolk, Virginia 23510. The Clerk must receive this written notice within sixty (60) days from this Order's date.

The Court **DIRECTS** the Clerk to provide a copy of this Order to all Parties.

**IT IS SO ORDERED.**

Norfolk, Virginia
January 22, 2024

Raymond A. Jackson
United States District Judge